[No. 22954. Department One. May 26, 1931.]

TOWN OF BUCODA, *Respondent,* v. L. L. SWANEY, *Appellant.*[1]

*Harry L. Parr,* for appellant.
*H. E. Grimm,* for respondent.

MITCHELL, J.—L. L. Swaney was convicted of the crime of conducting a drug store in Bucoda, Washing-

[1]Reported in 299 Pac. 652.

ton, a town of the fourth class, without complying with an ordinance requiring a license to carry on such business, and has appealed from a fine and judgment of one dollar and costs.

The facts were stipulated. The case presents the sole question of the validity of the ordinance enacted by the town council of Bucoda under § 1, chapter 207, Laws of 1927, p. 302; Rem. 1927 Sup., § 9175, relating to the power of municipal corporations of the fourth class to levy and collect taxes and license certain kinds of business, subdivision ten of which provides that such municipal corporations shall have power "to license, for purposes of regulation and revenue, all and every kind of business, authorized by law and transacted and carried on in such town," etc. Concededly, the ordinance is a revenue measure, and prescribes license fees for forty-one different kinds of business, fixing the amount for each and providing that such fee shall be paid by all persons, firms or corporations carrying on such business.

The question of power conferred by the legislature upon municipal corporations to levy taxes for revenue purposes upon different kinds of business conducted in the city was discussed and sustained in *Stull v. De Mattos,* 23 Wash. 71, 62 Pac. 451, 51 L. R. A. 892, the court saying, among other things, "All presumptions and intendments are in favor of the validity of the tax."

Appellant, admitting that the purpose of the ordinance is revenue, does not claim that the amount of the license fee for conducting a drug store is unreasonable, or that there is any discrimination or unjust classification in the scheme of the ordinance. One objection urged by him, as we understand, is that his business, being a common and useful one, can be made to pay only such license fee as is necessary to make

compensation for services of inspection and regulation, but that it cannot be taxed. He relies on the case of *Seattle v. Dencker*, 58 Wash. 501, 108 Pac. 1086, 137 Am. St. 1076, 28 L. R. A. (N. S.) 446. That case involved the validity of an ordinance providing a license tax for the sale of goods by means of an automatic device, and while it was conceded that the ordinance was a revenue measure rather than a regulatory one, it was held to be violative of the constitutional provision against special privileges.

In that case, it was said:

". . . that it is a well-known attribute of sovereignty to tax occupations for the purpose of raising revenue, and that such tax may be imposed in the form of a license fee."

It is true that, in a somewhat general discussion in that case, upon speaking of the useful trades and employments, it was said to be well settled that the license required of employments of that character "can carry with it only such fee as is necessary to make compensation for the regulation services and cannot be perverted into a tax." Clearly, however, that statement was not necessary to the decision, because the case did not involve either a statute or ordinance providing for the exercise of the power to license for revenue, but only involved "an ordinance licensing certain automatic devices, and provided a penalty for violation," which ordinance was held to be invalid because discriminatory, as heretofore stated.

Later, in *Seattle v. King*, 74 Wash. 277, 133 Pac. 442, the same question as the one involved in the present case was presented. There, the city passed an ordinance, in effect, making it unlawful for any person, firm or corporation to drive or operate within the city any vehicle used for the transportation of persons or merchandise for hire without first procuring a license, the

fee for which was four dollars per annum. Upon a stipulation between the parties in the case that the license fee was "more than sufficient to reimburse the city for the expense of police supervision, issuance of the license, and regulation necessary under the ordinance," it was contended that the city had no power to enact and enforce such an ordinance. The contention was answered by calling attention to the statute which gave the city power "to grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor."

And further and more specifically answering the contention that the ordinance was void because the license fee was more than enough to reimburse the city for issuing the license, and for expenses incident to the regulation of the business, attention was called to the meaning of the statute as explained in *Fleetwood v. Read,* 21 Wash. 547, 58 Pac. 665, 47 L. R. A. 205, to the effect that it gave to cities the power to license for revenue, as well as regulation, and the conclusion was reached that, "since the city has the additional power to license for revenue, it is plain that the ordinance is not void because of the amount of the license fee charged."

That statute, applicable to cities of the first class, as construed in the cases of *Fleetwood v. Read* and *Seattle v. King, supra,* confers the same power upon cities of that class as is given in the statute involved in this case to cities and towns of the fourth class. And in *Pacific Tel. & Tel. Co. v. Everett,* 97 Wash. 259, 166 Pac. 650, it is said that in this state it is well settled law that license taxes may be levied upon businesses and occupations (citing cases).

Other cases cited by counsel for the appellant are *In re Aubrey,* 36 Wash. 308, 78 Pac. 900, 104 Am. St. 952, 1 Ann. Cas. 927; *Seattle v. Gibson,* 96 Wash.

425, 165 Pac. 109, and *State ex rel. Makris v. Superior Court*, 113 Wash. 296, 193 Pac. 845, the first of which involved a legislative act, the other two, city ordinances, all of a regulatory kind which, in effect, without prescribing any rule or standard of action, authorized the issuance or refusal of a license or permit according to the discretion or arbitrary choice of some designated board or official. These cases are relied on by counsel in making the further contention that the ordinance permits arbitrary conduct on the part of the town council, and is therefore invalid.

The only language of the ordinance referred to for that argument is found in § 5 and, in our opinion, is misunderstood by counsel. That section provides that it shall be unlawful to engage in any of forty-one kinds of business, that are enumerated, without first obtaining a license; ''application for which shall be made to and approved by the town council.'' The provision is not that application shall be made to some subordinate official who is directed to make an examination, exercise discretion, and favor or refuse an application, nor that the council itself shall conduct an examination, exercise discretion, or have the power of arbitrary choice or refusal, as ordinarily found in ordinances of a regulatory sort that have from time to time been declared by the courts to be invalid.

Here, the language is plain and mandatory with respect to the application, to the effect that it shall be made to, and approved by, the town council, and, without question, reasonably construed, means that the application complying in form with the terms of the ordinance as to kind of business, length of time, and the amount of the license fee, shall or must be approved by the town council. This being a revenue measure relating to forty-one different kinds of ordinary, common businesses that may be licensed, the approval of

48

the city council to an application in proper form may be compelled, for aught that appears in the language of the ordinance.

Affirmed.

TOLMAN, C. J., MAIN, MILLARD, and HOLCOMB, JJ., concur.