[No. 4402.   Decided December 16, 1902.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLOTTE

CLARK, *Trustee, Appellant.*

CONSTITUTIONAL LAW — LEGISLATIVE POWERS — INHERITANCE TAX.

The absence in the constitution of specially delegated power to the legislature of this state to enact laws for the taxation of inheritances is not to be construed as a restriction of the right, under the provisions of the Bill of Rights, which declare in art. 1, § 1, that "all political power is inherent in the people, and governments derive their just powers from the consent of the governed," and in art. 1, § 30, that "the enumeration in this constitution of certain rights shall not be construed to deny others retained by the people," since legacies and inheritances are but creatures of the law, and natural subjects for legislative control, in the absence of constitutional prohibition.

SAME.

Laws 1901, p. 67, providing for the taxation of inheritances is not invalid by reason of exempting some and laying proportional taxes on different ones, since the charges provided for are upon the passing of the estate by succession and are not a tax upon property, and hence do not conflict with art. 7, §§ 1, 2, 5, of the state constitution, which require all property to be taxed uniformly according to its value in money.

SAME — EQUALITY OF TAXATION.

The exemption in the inheritance-tax law (Laws 1901, p. 68, § 2) from the provisions of the act of sums below $10,000 when the estate passes to direct heirs and kindred is not invalid as violating the constitutional requirement of equality in taxation, for the reason that it does not extend the same exemption to devises to collateral heirs or strangers to the blood, since there is no inequality provided among members of the same class, and such rule of equality does not forbid a liberal classification for purposes of taxation.

Appeal from Superior Court, Spokane County.—Hon. GEORGE W. BELT, Judge. Affirmed.

*Sullivan, Nuzum & Nuzum,* for appellant.

*W. B. Stratton,* Attorney General, and *E. W. Ross* and *C. C. Dalton,* for the State.

The opinion of the court was delivered by

Reavis, C. J.—James Clark died testate in Spokane county August 8, 1901, owning and possessed of property, real and personal, within the state, of the value of $140,-751.40. By his will Charlotte Clark, appellant, was appointed executrix and trustee for the purpose of administering the estate under the provisions of the law. Controversies arose between appellant and the state over the demand by the state for the tax claimed under the provisions of the act relating to the taxation of inheritances. Laws 1901, p. 67. The facts are stated by agreement. Those material for consideration here are, in substance: That all debts owing by deceased at the time of his death for local and state taxes due, and the reasonable sum for funeral expenses, costs of appraisement for assessing the inheritance tax, and costs of administration, amount to $12,333.50; that after deduction of said sum of $12,-333.50 from the estate, the entire residue thereof is devised as follows: To N. Fred Essig, a stranger to the blood of said deceased, $1,500; to E. Kauten, a stranger to the blood of said deceased, $1,000; to Mamie McCoy, a niece of said deceased, $5,000; to Agnes Clark, a stranger to the blood of said deceased, $10,000; to Mrs. Mary Harvey, a sister of said deceased, $2,500; to Mrs. Bessie Casey, a sister of said deceased, $2,500; to Catherine M. Clark, a daughter of said deceased, $52,633.95; to Patrick P. Clark, a son of said deceased, $53,383.95;—total $128,517.90. Upon these facts the court concluded that the $10,000 exemption mentioned in § 2 of the statute is a single exemption confined to and in favor of the class of

heirs composed of father, mother, husband, wife, lineal descendants, adopted child, or the lineal descendants of an adopted child, and must be taken from their portion of the estate; namely, Catherine Clark, the daughter, and Patrick P. Clark, the son of deceased; and further concluded that such exemption did not extend to the shares of any of the other legatees mentioned; that there was no authorized exemption of the estate passing to collateral heirs or strangers to the blood; that the tax imposed in the statute is laid upon the succession or devolution of the estate and upon the right of passing the estate, and is not a tax upon the estate.

1. The first objection urged to the decree is that the statute under which it is made is invalid, because the legislature was without power to lay such an imposition or tax upon the devolution of an estate. It does not appear from the argument of counsel that they assume the objection to the power of the legislature is sustained by any considerable authority, but an earnest appeal is made to general principles of constitutional construction. It is urged that our state constitution grants to the legislature special and delegated powers, and legislative enactments, to be valid, must come within such grant of powers; but no sanction is found for such principle of interpretation in the numerous authorities referred to in counsel's brief. The two principal cases relied upon by counsel as adverse to the validity of such laws are *Black v. State,* 113 Wis. 205 (89 N. W. 522), and *Curry v. Spencer,* 61 N. H. 624 (60 Am. Rep. 337). In each of these decisions inheritance tax statutes were determined invalid upon construction of provisions existing in the respective state constitutions. In the Wisconsin case the court concluded that a provision in the statute before it exempting estates below $10,000 in value, and without regard to the value of the bequests, and

taxing those above the value of $10,000, conferred special privileges on the exempted class, and was forbidden by a constitutional provision against conferring special privileges.    It is true the opinion questions the complete control of the state over the devolution of property after the death of the owner.    Though conceding that the current of judicial expression is in favor of such power, the concurring opinion in the decision of one of the justices also maintains that the general constitutional declaration of the right to life, liberty and the pursuit of happiness protects the right to inherit or devise property, because such rights are natural ones.    But he also concedes that the weight of the highest authority defines such rights as arising from municipal law.    In the New Hampshire case an inheritance tax was adjudged void because of a constitutional restriction found to exist in the grant of the taxing power to the legislature.    The court observes:

"Nor is it to be questioned that the subject of the taxation in the present case is one within legislative control, because inheritances, distributive shares, and legacies are but creatures of the law; in fact, the only right to take or dispose of property by descent or devise is derived from the sovereign power of the state through its laws.    'Wills, therefore, and testaments, rights of inheritance and successions, are all of them creatures of the civil or municipal laws, and accordingly are in all respects regulated by them.'    2 Blk. Com. 12.    It must be conceded, then, that in the absence of constitutional prohibition, the legislature has the power to impose conditions by way of a tax upon legacies and successions; and so the only inquiry is, whether the taxation in question is excluded either by the express terms of the constitution, or by necessary implication, because if it is not, the power of the legislature must be regarded as having been properly exercised.    An answer to the inquiry is readily afforded; for while by art. 5 of our constitution the legislature is empowered to assess and

levy taxes, this grant of power is expressly limited to 'proportional and reasonable assessments, rates, and taxes upon all the inhabitants and residents within the said state, and upon the estates within the same,' and by the Bill of Rights (Art. 12) every inhabitant is bound to contribute only his share, which manifestly, and according to the uniform decisions of this court for more than half a century, cannot be more than his proportional share of the common burden."

Thus these cases in which such taxes were adjudged invalid concede the power of the legislature to enact such statutes unless some express or implied restriction is found in the constitution. The only intimation made in any of the authorities before us of a doubt of the plenary power of the legislature to enact such laws where unrestrained by constitutional provisions seems to have been expressed, though it was not determined, in the Wisconsin case. Counsel refer to two sections of our constitution, which, they contend, by implication support their view that the constitution is to be construed as a delegation of powers to the legislature,—the first, § 30, art. 1, which reads, "The enumeration in this constitution of certain rights shall not be construed to deny others retained by the people;" and § 1, art. 1: "Political Power. All political power is inherent in the people, and governments derive their just powers from the consent of the governed." The latter (§ 1), is evidently the statement of a fundamental principle inhering in the formation of the state and federal governments. It has no application to the distribution of the sovereign power of the government by the people. The legislature represents this sovereignty of the people, except as limited by the constitution. The first (§ 30), is apparently the expression that the declaration of certain fundamental rights belonging to all individuals and made in the Bill of Rights shall not be construed to mean the

abandonment of others not expressed, which inherently exist in all civilized and free states. Those expressly declared were evidently such as the history and experience of our people had shown were most frequently invaded by arbitrary power, and they were defined and asserted affirmatively. Consistently with the affirmative declaration of such rights, it has been universally recognized by the profoundest jurists and statesmen that certain fundamental, inalienable rights under the laws of God and Nature are immutable, and cannot be violated by any authority founded in right. The right to hold property by use and acquire by labor or occupancy is usually defined as a natural one, but such right, according to the same primitive law, ceased upon abandonment of its use. This view is well stated by Blackstone:

"The most universal and effectual way of abandoning property is by the death of the occupant; when, both the actual possession and intention of keeping possession ceasing, the property which is founded upon such possession and intention ought also to cease of course. For, naturally speaking, the instant a man ceases to be, he ceases to have any dominion; else if he had a right to dispose of his acquisitions one moment beyond his life, he would also have a right to direct their disposal for a million of ages after him: which would be highly absurd and inconvenient. All property must therefore cease upon death, considering men as *absolute individuals,* and unconnected with civil society: for, then, by the principles before established, the next immediate occupant would acquire a right in all that the deceased possessed." 2 Blackstone, Commentaries, 10.

That the right to control the disposition of property after death and to devise by will is conventional has been the settled view of the highest judicial authority in perhaps all civilized countries. The supreme court of the United States, in *Magoun v. Illinois Trust & Savings*

*Bank,* 170 U. S. 283 (18 Sup. Ct. 594), upon a full statement of the history and authority of such taxes, said:

"It is not necessary to review these cases, or state at length the reasoning by which they are supported. They are based on two principles: 1. An inheritance tax is not one on property, but one on the succession. 2. The right to take property by devise or descent is the creature of the law, and not a natural right—a privilege, and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the states may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions; and are not precluded from this power by the provisions of the respective state constitutions requiring uniformity and equality of taxation."

Inheritance tax laws have been in force in the state of Pennsylvania for sixty-five years or more, and in a number of other states for a considerable time. The main features in all these statutes are substantially the same, and their constitutional validity has been affirmed in every court in which they have been challenged, both state and federal, except in instances which arose where their validity was assailed on the ground of constitutional restrictions, as in the Wisconsin and New Hampshire cases heretofore mentioned. The objection urged here, that the statute is in conflict with §§ 1, 2, and 5 of article 7 of the state constitution, relating to taxation, is not tenable, because the charge made upon the passing of the estate is not a tax on property. It is an impost or excise on the right to pass the estate and the privilege of the devisee to take. That it is not within the provision relating to the tax on property is well settled by practically unanimous authority. In the following authorities will be found clear discussions and conclusive adjudications of both the legislative competency to enact such laws and the definition of

the nature of the charge levied on the right to pass the estate: *United States v. Perkins*, 163 U. S. 625 (16 Sup. Ct. 1073) ; *Strode v. Commonwealth*, 52 Pa. St. 181 ; *Eyre v. Jacob*, 14 Grat. 422 (73 Am. Dec. 367) ; *Schoolfield's Exr. v. Lynchburg*, 78 Va. 366 ; *State v. Dalrymple*, 70 Md. 294 (17 Atl. 82, 3 L. R. A. 372) ; *Clapp v. Mason*, 94 U. S. 589 ; *In re Merriam's Estate*, 141 N. Y. 479 ('36 N. E. 505) ; *State v. Hamlin*, 86 Me. 495 (30 Atl. 76, 25 L. R. A. 632, 41 Am. St. Rep. 569) ; *State v. Alston*, 94 Tenn. 674 (30 S. W. 750, 28 L. R. A. 178) ; Dos Passos, Collateral Inheritance Tax, 20 ; *In re Wilmerding*, 117 Cal. 281 (49 Pac. 181) ; *Minot v. Winthrop*, 162 Mass. 113 (38 N. E. 512, 26 L. R. A. 259) ; *Gelsthorpe v. Furnell*, 20 Mont. 299 (51 Pac. 267, 39 L. R. A. 170) ; *Scholey v. Rew*, 23 Wall. 331.

It may be said that it has in principle been determined by this court in *Fleetwood v. Read*, 21 Wash. 547 (58 Pac. 665, 47 L. R. A. 205). There the court observed of a license tax:

"Some question was raised by the court at the time of the argument of this case in relation to the ordinance being in conflict with §§ 1, 2 and 9 of art. 7 of the state constitution, which provide for uniformity in taxation. Counsel for the respondent was requested by the court to furnish it with a brief on that subject, which he did, and upon an examination of the cases cited and of other cases, we have become convinced that the question raised by the court was not a question pertinent in this case; that, under the great weight of authority, a tax on occupation, business, etc., is not, in legal contemplation, a tax on property, which falls within the inhibition imposed by the usual constitutional provisions in relation to uniformity of taxation ; and, in consideration of the fact that the state constitution is a limitation upon the actions and powers of the legislature instead of a grant of power, that the power of the legislature to tax trades, professions and occupations

is, in the absence of constitutional restriction, a matter within its absolute control and resting entirely in sound legislative discretion."

2. "The inheritance tax shall be and is to be levied on all estates subject to the operation of this act on all sums above the first $10,000.00, where the same shall pass to or for the use of the father, mother, husband, wife, lineal descendant, adopted child, or the lineal descendant of an adopted child, one (1) per centum.   On all sums not exceeding the first fifty thousand dollars, of three per centum, where such estate passes to collateral heirs to and including the third degree of relationship, and to six per cent. where such estates pass to collateral heirs beyond the third degree or to strangers to the blood.   On all sums above the first fifty thousand dollars and not exceeding the first one hundred thousand dollars, four and one-half per centum to collateral heirs to and including the third degree, and nine per centum to collateral heirs beyond the third degree or to strangers to the blood.   And on all sums in excess of the first one hundred thousand dollars the tax shall be six per centum to collateral heirs to and including the third degree, and twelve per centum to collateral heirs beyond the third degree or to strangers to the blood."   Laws 1901, p. 68, § 2.

It is urged that the above section is invalid because of the exemption of $10,000 in value from the portion of the estate devised to the first class mentioned, which exemption is not extended to collateral heirs or strangers to the blood.   The rule of equality in taxation is invoked against this exemption.   It may be observed that the rule invoked does not forbid a liberal classification for purposes of taxation.   The classification made here is manifestly reasonable.   There is no inequality among the members of the same class.   This objection is discussed in many of the authorities heretofore cited.   It is so completely met and disposed of in the case of *Magoun v. Illinois Trust & Savings Bank, supra,* that it must be convincing here.

It is concluded that the statute under consideration relative to taxation of inheritances provides for an excise or impost on the devolution of the estate after the death of the owner, and it is not in conflict with any implied or express provision of the state constitution, or any infringement upon the limitations of the federal constitution, that the exemption of $10,000 inures to the benefit of the first class specified· therein.    The decree is affirmed.

DUNBAR, MOUNT and ANDERS, JJ., concur.